UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

                                                     **ORDER**
                                                     21-CR-341 (MKB)

          - against -

JOHN DOUGLAS PARKER,

                                   Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On December 23, 2008, Defendant John Douglas Parker pleaded guilty to two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d), before Judge James Knoll Gardner of the United States District Court for the Eastern District of Pennsylvania.[1] On June 17, 2009, Judge Gardner sentenced Parker to 228 months of imprisonment and five years of supervised release.[2] On April 6, 2021, Judge Jeffrey L. Schmehl granted Parker's motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and ordered that Parker "serve the supervised release term imposed by the Court."[3] On June 17, 2021, Judge Schmehl granted the U.S. Probation Office's ("Probation") request to modify Parker's supervision conditions to require Parker to "refrain from the illegal possession and/or use of drugs," required him to "submit to

---

[1] (Plea Hr'g Minute Entry dated Dec. 29, 2008, *United States v. Parker*, No. 08-CR-534 (E.D. Pa. Dec. 29, 2008); Indictment, *United States v. Parker*, No. 08-CR-534 (E.D. Pa. Sept. 9, 2008); Criminal Docket for Case No. 08-CR-534 5–6, annexed to Transfer of Jurisdiction for Supervision of Release, Docket Entry No. 3; Indictment, annexed to Transfer of Jurisdiction for Supervision of Release, Docket Entry No. 3-1.)

[2] (J., *United States v. Parker*, No. 08-CR-534 (E.D. Pa. June 17, 2009); J. 2, 3, annexed to Transfer of Jurisdiction for Supervision of Release, Docket Entry No. 3-1.)

[3] (Order, *United States v. Parker*, No. 08-CR-534 (E.D. Pa. Apr. 6, 2021); Order, annexed to Transfer of Jurisdiction for Supervision of Release, Docket Entry No. 3-1.)

urinalysis or other forms of testing to ensure compliance," and to further require that Parker "submit to drug treatment" recommended by Probation and approved by the Court and "remain in treatment until satisfactorily discharged" with court approval.[4] The same day, Judge Schmehl transferred jurisdiction over Parker's supervised release to the United States District Court for the Eastern District of New York, which the Court accepted on June 25, 2021. (Transfer of Jurisdiction Request, Docket Entry No. 1; Transfer of Jurisdiction Request Accepted, Docket Entry No. 2.)

On May 5, 2025, Parker moved for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1).[5] (*See* Def.'s Mot. for Early Termination of Probation/Supervised Release ("Def.'s Mot."), Docket Entry No. 20.) The Government opposes the motion, and Probation does not recommend early termination.[6] (Gov't Opp'n 1; Probation Report 4.) Parker has approximately ten months remaining on his term of supervised release. (*See* Gov't Opp'n 3.) For the reasons discussed below, the Court denies Parker's motion for early termination of supervised release.

---

[4] (Request and Order for Modifying the Conditions or Term of Supervision, *United States v. Parker*, No. 08-CR-534 (E.D. Pa. June 17, 2021); Notice for Modification of Supervision Conditions, annexed to Transfer of Jurisdiction for Supervision of Release, Docket Entry No. 3-1.)

[5] On May 22, 2023, Parker moved for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1), which Probation did not recommend and the Government opposed. (Def.'s Mot. for Early Termination of Probation/Supervised Release, Docket Entry No. 5; Report on Offender Under Supervision: Request for Early Termination of Supervision, Docket Entry No. 6; Gov't Opp'n to Def.'s Mot. for Early Termination of Probation/Supervised Release, Docket Entry No. 9.) The Court denied Parker's motion on June 23, 2023. (Order dated June 23, 2023.)

[6] (Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n"), Docket Entry No. 22; Report on Offender Under Supervision: Request for Early Termination of Supervision ("Probation Report"), Docket Entry No. 21.)

**I. Discussion**

    a. **Standard**

A district court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release" after considering the "factors set forth in [S]ection 3553(a)" and concluding that "such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).[7] *See United States v. Torres*, No. 21-2511-CR, 2022 WL 17087048, at *3 (2d Cir. Nov. 21, 2022) ("Under Section 3583(e)(1), a district court may, after considering certain factors set forth in 18 U.S.C. § 3553(a), terminate or reduce a term of supervision after one year of supervised release if 'such action is warranted by the conduct of the defendant released and the interest of justice.'" (quoting 18 U.S.C. § 3583(e)(1))).

"Early termination is not, however, 'warranted as a matter of course,' and decisions regarding termination and modification are within the discretion of the district court." *United States v. Rosario*, No. 17-CR-27, 2023 WL 7305260, at *2 (S.D.N.Y. Nov. 6, 2023) (quoting *United States v. Bastien*, 111 F. Supp. 3d 315, 321 (E.D.N.Y. 2015)); *see also United States v. Sheckley*, 129 F.3d 114, 1997 WL 701370, at *1 (2d Cir. 1997) (unpublished table decision)

---

[7] Although 18 U.S.C. § 3583(e)(1) is not identical to the statute permitting early termination of probation, *see* 18 U.S.C. § 3564(c), courts treat the statutes as if they are *in pari materia* and apply decisional law interpreting one statute to motions brought pursuant to the other. *See, e.g.*, *United States v. Solano*, No. 19-CR-17, 2023 WL 4599937, at *1–2 (E.D.N.Y. July 18, 2023); *United States v. Leone*, No. 02-CR-528, 2013 WL 867527, at *2 n.3 (E.D.N.Y. Mar. 4, 2013) ("While [*United States v. Lussier*, 104 F.3d 32 (2d Cir. 1997)] regards a request for modified supervised release, both *Lussier* and the present case regard the [c]ourt's power to terminate after considering the Section 3553 factors."); *United States v. Simon*, No. 09-CR-118, 2012 WL 4842249 (S.D.N.Y. Oct. 10, 2012) (applying the *Lussier* standard in context of a motion pursuant to 18 U.S.C. § 3564(c)); *see also United States v. Wachsman*, No. 04-CR-902, 2008 WL 5042842, at *1 (E.D.N.Y. Nov. 25, 2008) (noting that "the statutory language of the two sections is essentially the same").

("[T]he determination of early release is a discretionary decision made by the district court." (citing *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997))); *United States v. Fleming*, --- F. Supp. 3d ---, ---, No. 18-CR-197, 2025 WL 1262484 (E.D.N.Y. May 1, 2025) ("Courts do not order early termination of supervised release as a matter of course." (quoting *United States v. Stein*, No. 09-CR-377, 2020 WL 4059472, at *2 (E.D.N.Y. July 19, 2020))); *United States v. Ottey*, No. 19-CR-334, 2024 U.S. Dist. LEXIS 4664, at *2 (E.D.N.Y. Jan. 9, 2024) (reiterating that early termination is not "warranted as a matter of course" (quoting *Rosario*, 2023 WL 7305260, at *2)); *Bastien*, 111 F. Supp. 3d at 321 (quoting *United States v. Fenza*, No. 03-CR-921, 2013 WL 3990914, at *2 (E.D.N.Y. Aug. 2, 2013)) (same).

While a defendant is "not entitled to early termination simply because he has successfully served a portion of his [probation] term," *Sheckley*, 1997 WL 701370, at *2, new or changed circumstances are not required to terminate or modify the conditions of probation, *see United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016); *Lussier*, 104 F.3d at 36. "So long as the court, when modifying [probation] conditions, considers the relevant [Section] 3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." *Parisi*, 821 F.3d at 347 (citations omitted). A court may consider, for example, whether the defendant's conduct has rendered the term of probation "too harsh or inappropriately tailored to serve the general punishment goals of [S]ection 3553(a)." *Lussier*, 104 F.3d at 36. Accordingly, courts in this District have declined to grant early termination based solely on compliance with the terms of probation or supervised release, *see, e.g.*, *United States v. Wheeler*, No. 20-CR-492, 2025 WL 1295610, at *2 (S.D.N.Y. May 5, 2025); *United States v. Linick*, No. 13-CR-120, 2023 WL 3570664, at *2 (E.D.N.Y. May 18, 2023); *United States v. Lewis*, No. 13-CR-487, 2020 WL 1275233, at *2 (E.D.N.Y. Mar. 17,

2020), but have granted motions for early termination in light of rehabilitative efforts and exceptionally good conduct, *see, e.g.*, *United States v. Martin*, No. 03-CR-795, 2025 WL 1549005, at *1 (E.D.N.Y. May 30, 2025); *United States v. Hutchinson*, 577 F. Supp. 3d 134, 135 (E.D.N.Y. 2021); *United States v. Jiminez*, No. 92-CR-91, 2021 WL 535208, at *1–2 (E.D.N.Y. Feb. 12, 2021); *United States v. Thomas*, 346 F. Supp. 3d 326, 335–36 (E.D.N.Y. 2018); *United States v. Wood*, No. 88-CR-723, 2009 WL 3259422, at *2 (E.D.N.Y. Oct. 8, 2009).

"As with motions under the First Step Act, [the Second Circuit does] not 'require district courts to make specific findings of fact with respect to each of [the Section 3553(a)] factors,' but rather 'ha[s] held that a statement that the district court has considered the statutory factors is sufficient.'" *Torres*, 2022 WL 17087048, at *3 (second alteration in original) (quoting *United States v. Gammarano*, 321 F.3d 311, 315–16 (2d Cir. 2003)). In addition, "the district court should provide some explanation for its decision with respect to such a motion." *Id.* (quoting *United States v. Young*, 998 F.3d 43, 55–56 (2d Cir. 2021)).

### b. The Court declines to terminate Parker's supervised release

Parker argues that the Court should terminate the remainder of his supervised release because he has "changed [his] life an[d] lifestyle" and has complied with Probation's requests.[8] (Def.'s Mot. 1, 3.) First, he notes that he has stopped using cocaine. (*Id.* at 1.) Second, Parker argues that he has completed, and is still taking, continuing education courses and started a new career at the Center for Developmental Disabilities, working with young people who have autism and Down Syndrome. (*Id.* at 2.) Third, he argues that his Probation Officer does not understand

---

[8] Parker refers to his motion as a request for termination of "supervised probation." (Def.'s Mot. 1.) However, Parker is not on probation, but is serving a five year term of supervised release. (*See* J. 3.) The Court accordingly construes Parker's motion as a request for early termination of supervised release.

that he has changed, is continuing his education, and gotten a job, and that the officer "demand[s]" that he miss work to submit for toxicology screenings. (*Id.* at 2–3.) He requests that the Court terminate his supervised release so that he can retire in four years when he is 67 years old. (*Id.*)

The Government argues that Parker's "application fails to establish changed circumstances sufficient to warrant early termination." (Gov't Opp'n 1.) First, they argue that Parker's "recent drug use — including for cocaine and fentanyl — and failure to provide monthly toxicology screenings militate in favor of continued supervision." (*Id.* at 4.) They recount the two Violation of Supervised Release ("VOSR") hearings the Court held in 2024 after Parker's urinalysis samples returned positive results for various drugs, including marijuana, cocaine, fentanyl, and alcohol, as well as Parker's failure to complete inpatient treatment for his drug use. (*Id.* at 3.) The Government also notes that Parker has failed to provide monthly urine toxicology screenings to Probation since January 27, 2025. (*Id.*) Second, the Government argues that the Section 3553(a) factors "weigh heavily against early termination of the defendant's supervision." (*Id.* at 4.) They note that Parker "is a career criminal with a long history of probation and parole violations, dating back to the mid-1980s," and that Parker "routinely resorted to violence or the threat of violence when committing his crimes." (*Id.*) In addition, the Government argues that Parker "has repeatedly squandered opportunities through parole or probation to pursue a life without crime" and that he "would still have over two months remaining before his scheduled release from prison" but for "the extraordinary circumstances created by the COVID-19 pandemic" that facilitated his sentence reduction. (*Id.*) The Government concludes that nothing in Parker's "application undermines the need for [Parker] to complete his sentenced supervised release." (*Id.* at 5.)

Probation contends that Parker "does not meet the requirements" for early termination pursuant to the factors Probation Officers consider in evaluating early termination requests. (Probation Report 3.)  First, Probation notes that Parker is a "career offender with a violent past," and career criminals are disfavored from receiving early termination. (*Id.*)  Second, Probation states that Parker has violated the terms of his release in the past year. (*Id.*)  Probation notes that the Court "was made aware of violative conduct on September 24, 2024, stemming from Parker's continued marijuana [and] cocaine use, and failure to complete inpatient treatment." (*Id.*)  Third, Probation contends that Parker is not in "substantial compliance with all conditions of supervision." (*Id.*)  While Parker is "currently attending outpatient substance abuse treatment at Samaritan Village," he has "failed to provide monthly urine toxicology screenings." (*Id.*)  Probation notes that Parker cites his new employment at the Center for Children with Developmental Disabilities "as a barrier for providing the requested monthly urine toxicology" because he has a "substantial commute" to the Center in Syosset, Long Island. (*Id.*)  Probation observes that they are "concerned that Parker may still be using cocaine and driving, placing identifiable risk to himself, and the safety of the community," and that Probation "cannot report with certainty that Parker has sustained remissions as it relates to substance abuse because he only wishes to be drug tested on his terms." (*Id.*)  Probation reports that "Parker's interactions with the Probation Department have as of recent become hostile, dismissive, and vulgar," but Parker has otherwise "made progress during supervision with maintaining employment and refraining from criminal activity," "has maintained stable residence" with his mother, and has "satisfied his special assessment fee and imposed restitution and has no outstanding financial obligations with the Court." (*Id.*)

The Court denies Parker's request for early termination of supervised release because he has failed to comply with the terms of his release. Even in cases where individuals have fully complied with the terms of their supervised release, courts have found that such conduct does not amount to "exceptionally good behavior" as to render the conditions of their supervised release "too harsh or inappropriately tailored to . . . the general punishment goals of [S]ection 3553(a)." *Lussier*, 104 F.3d at 36; *Wheeler*, 2025 WL 1295610, at *2 (denying early termination of supervised release because "successful compliance with the conditions of his supervised release to date" along with "steady employment" are "what is expected of a person under . . . supervised release and does not warrant early termination" (quoting *Fenza*, 2013 WL 3990914, at *2)); *United States v. Asamoah*, No. 23-CR-529, 2025 WL 1030459, at *1 (S.D.N.Y. Apr. 7, 2025) (denying early termination of supervised release where the defendant "has complied with the conditions of supervised release, maintained his employment, is dedicated to his family, and has a low risk of recidivism" because "compliance with the terms of supervised release is what is expected of all supervisees"); *United States v. Capuano*, No. 15-CR-312, 2025 WL 327977, at *2 (E.D.N.Y. Jan. 29, 2025) (denying early termination of supervised release because "mere compliance with the supervised release conditions and the inconvenience that these conditions impose on [the defendant] . . . do not rise to the level of 'exceptionally good behavior' and do not present 'new or unforeseen circumstances'" warranting early termination). Parker has not complied with the terms of his supervision, resulting in two VOSR hearings within the past year, (Minute Entry for VOSR Hr'g dated July 31, 2024; Minute Entry for VOSR Hr'g dated Oct. 31, 2024), and has also failed to appear for multiple urinalysis samples as required by the terms of his release, (Probation Report 3). Because Parker has recently violated the terms of his release and appears to be continuing to do so by failing to provide urinalysis samples, early termination

of supervised release is not warranted. *See United States v. Solano*, No. 19-CR-17, 2023 WL 4599937, at *3 (E.D.N.Y. July 18, 2023) (denying early termination of supervised release in part where the defendant had "six instances of non-compliance" with the terms of his release); *United States v. Campbell*, 690 F. Supp. 3d 165, 166–67 (W.D.N.Y. 2023) (denying early termination of supervised release where the defendant had a "a significant, repeated history of violating post-incarceration conditions that have been imposed" and "within six months of commencing the current term of supervised release he violated the terms and conditions by using marijuana, which demonstrates a continuing disregard for the rules"); *United States v. Heyward*, No. 15-CR-341, 2021 WL 5889323, at *1 (S.D.N.Y. Dec. 13, 2021) (denying early termination of supervised release where the defendant had previously committed a supervised release violation and "struggled with intermittent marijuana usage while under supervision" and could "benefit from the support afforded to him by the Probation Office").

In addition, the factors set forth in Section 3553(a) weigh against terminating Parker's supervised release. First, Parker's criminal history, 18 U.S.C. § 3553(a)(1), weighs heavily against termination. Parker has "nearly 25 years of arrests, convictions, incarcerations, and parole violations, with a particular penchant for violently targeting women." (Gov't Opp'n 2.) Parker committed the armed bank robberies while "claim[ing] to have a firearm" and "displaying a knife and threatening the life of the female bank tellers," and received criminal history points at sentencing for committing the robberies while on probation or parole and within two years of release from prior custody. (*Id.* at 1, 2.) Parker's long history of violent criminal activity, including while on probation or parole, counsel against early termination. *See Fleming*, 2025 WL 1262484, at *1–2 (denying early termination of supervised release where the defendant "has been compliant with his terms of supervised release and maintained full-time employment," "has

9

not been arrested or had any positive drug tests," and where the government did not oppose relaxing the conditions of the defendant's supervised release because the defendant's "prior instance of violent criminal activity while on supervised release — coupled with [his] subsequent drug and firearm offenses in the instant case — counsel in favor of caution"); *United States v. Shin*, No. 19-CR-552, 2024 WL 5179133, at *2 (S.D.N.Y. Nov. 7, 2024) (denying early termination of supervised release where the defendant was "convicted of six serious offenses arising from his extensive criminal conduct" and where the defendant's conduct was not a "lapse in judgment" but "stretched on for years"); *United States v. Melendez-Lebron*, No. 14-CR-201, 2024 WL 4297021, at *1 (W.D.N.Y. Sept. 26, 2024) (denying early termination of supervised release where the defendant had generally complied with the conditions of his release but where the defendant's "serious conviction followed [his] previous . . . convictions [for similar crimes] in state and federal courts," and thus the "nature and circumstance of the offense, the seriousness of [the d]efendant's criminal conduct, and the continuing interests of rehabilitation and deterrence counsel in favor of maintaining" supervised release).

Second, continued supervision will help ensure that Parker abstains from illicit drug use. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(D). As discussed above, Parker has violated the terms of his release by using drugs, including cocaine and fentanyl, and failing to appear for urine toxicology screenings for multiple months. Parker has also failed to complete inpatient treatment for his substance use, and Probation is now concerned that Parker is using drugs while driving to work. (*See* Probation Report 3.) When considering "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), the Court finds that continued supervision would help ensure that Parker abstains from drug use and continues to be a productive member of society. *See United States v. Warren*, No. 21-CR-753, 2024 WL 497690, at *1–2 (S.D.N.Y. Feb. 8, 2024) (denying early

termination of release where, although the defendant had "spent the past eight years working on his sobriety," he had relapsed multiple times, including with cocaine, and could "benefit from the services of the United States Probation Office"); *Solano*, 2023 WL 4599937, at *2–3 (crediting the defendant's participation in substance abuse and sex offender treatment but denying early termination motion because, *inter alia*, additional treatment would benefit the defendant).

## II. Conclusion

Having considered the facts, the applicable law, the parties' arguments, and the relevant 18 U.S.C. § 3553(a) factors, the Court denies Parker's motion for early termination of supervised release.

Dated: June 9, 2025
      Brooklyn, New York

                                        SO ORDERED:

                                        s/ MKB
                                      MARGO K. BRODIE
                                      United States District Judge